Scott **ADELINE,** Petitioner–Appellant,

v.

James **STINSON,** Superintendent of Great Meadow Correctional Facility, Respondent–Appellee.

Docket Nos. 98–2480, 98–2744.

United States Court of Appeals, Second Circuit.

Argued: Feb. 3, 2000.

Decided: March 14, 2000.

States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) dismissing, as time barred, his petition for a writ of habeas corpus. The question presented is whether petitioner's motions to the Appellate Division of the Supreme Court and the Court of Appeals of New York, which sought review of his conviction and were pending or brought on or after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, were properly filed applications for state post-conviction relief recognized as such under governing state procedures. We hold that the motion to the New York Court of Appeals was not, that petitioner's time to file his petition for federal habeas corpus relief therefore was not tolled during its pendency, and that as a result the petition's filing was untimely. Accordingly, we affirm.

## BACKGROUND

On February 7, 1985, following a jury trial in New York state court, petitioner was convicted of the murder of Joseph Chianese. The government alleged that petitioner had entered into an agreement with Chianese and another man to steal cocaine from a Brooklyn garage. When petitioner and Chianese entered the garage, however, petitioner, ignoring the cocaine, shot and killed Chianese because of a long-standing dispute regarding Chianese's girlfriend instead. On February 27, 1985, petitioner was sentenced to imprisonment for twenty years to life. On July 7, 1986, petitioner's conviction was unanimously affirmed by a panel of the New York Appellate Division, Second Department. *People v. Adeline,* 122 A.D.2d 61, 504 N.Y.S.2d 218 (N.Y.App.Div.1986).

By letter dated July 24, 1986 supplemented by another dated August 11, 1986, petitioner applied for permission to appeal to the New York Court of Appeals. On December 31, 1986, that application was denied without prejudice to petitioner's ability to renew it within thirty days after the Appellate Division's resolution of peti-

Barry M. Fallick, Rochman Platzer Fallick & Sternheim, LLP, New York, NY, for Petitioner–Appellant.

Howard A. Getzler, Assistant District Attorney, Kings County, New York (Charles J. Hynes, District Attorney, Kings County, New York, Roseann B. MacKechnie, Assistant District Attorney, of counsel), Brooklyn, NY, for Respondent–Appellee.

Before: OAKES, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

Petitioner–Appellant Scott Adeline appeals from a judgment of the United

tioner's pending motion to reargue his appeal before it. *People v. Adeline*, 69 N.Y.2d 707, 512 N.Y.S.2d 1033, 504 N.E.2d 401 (1986) (table). On January 20, 1987, the Appellate Division granted petitioner's motion to reargue but, on reconsideration, again affirmed his conviction. Petitioner did not renew his application to appeal to the New York Court of Appeals.

In 1988 and again in 1994, petitioner sought to vacate his judgment of conviction under N.Y.Crim. Proc. Law § 440.10. New York Supreme Court ruled against him on each occasion, and on each occasion the Appellate Division declined to hear an appeal. Such refusals are not themselves appealable to the New York Court of Appeals, as indicated by the order dismissing petitioner's attempt to appeal with respect to his 1994 petition. *People v. Adeline*, 86 N.Y.2d 731, 631 N.Y.S.2d 612, 655 N.E.2d 709 (1995) (table).

On April 19, 1996, petitioner moved in the Appellate Division to reargue his direct appeal, which had been decided by that court nearly a decade before. The motion was denied on June 13, 1996. Then, on April 17, 1997, petitioner filed an application with the New York Court of Appeals for what he styled a "certificate granting renewal of direct appeal." On May 20, 1997, Judge Levine dismissed the application in a one line order. *People v. Adeline*, 89 N.Y.2d 1087, 660 N.Y.S.2d 381, 682 N.E.2d 982 (1997) (table).

■ Finally, on July 16, 1997, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York.[1] In an order dated April 17, 1998, the district court concluded that the petition was time barred. On April 28, 1998, the district court entered a judgment dismissing the complaint. In a July 12, 1999 amended order, the district court granted a certificate of appealability pursuant to which petitioner brought this appeal. We now affirm.

## DISCUSSION

### I. Applicable Law

Among the changes in habeas corpus law ushered in by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), was the provision of a limitations period for the filing of federal petitions for habeas corpus. *See Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir.1998). AEDPA's general rule is that a prisoner in custody as a result of a state-court conviction has one year after the date that his or her conviction becomes final in which to file. *See id.;* 28 U.S.C. § 2244(d)(1). In *Ross* we decided that a prisoner, such as Adeline, whose conviction became final before AEDPA's effective date of April 24, 1996 has one year thereafter, or until April 24, 1997, to file a § 2254 habeas petition. *See Ross*, 150 F.3d at 103.

Under AEDPA, however, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In *Bennett v. Artuz*, 199 F.3d 116 (2d Cir.1999), we held that this tolling provision applies to "a petition challenging a pre-AEDPA conviction" and the one-year period determined to be applicable by *Ross*. *Bennett*, 199 F.3d at 118–19.

Under *Bennett*, to qualify for tolling purposes under § 2244(d)(2), "an applica-

---

**1.** When a prisoner is proceeding *pro se,* as petitioner then was, federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk. *See Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

Although the record is not clear on this point, in accordance with a concession by the government at oral argument on this appeal, we treat the petitioner's petition as having been given to prison officials for filing, and therefore having been filed, on the date that appears on his petition, July 16, 1997.

tion for state post-conviction relief recognized as such under governing state procedures [must] ha[ve] been filed" by the petitioner. *Id.* at 123. A properly filed "state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Id.* at 120.

Petitioner contends that his one-year limitation period was tolled twice: once during the pendency of his April 1996 motion to the Appellate Division (between April 24, 1996, the AEDPA effective date, and June 13, 1996, when the motion was denied); and once during the pendency of his April 1997 application for a "certificate granting renewal" to the New York Court of Appeals (between April 17, 1997, when the application was filed, and May 27, 1997, when the court dismissed it). Petitioner contends that his petition for habeas corpus was timely because, after deducting *both* tolled periods in the computation, the petition was effectively filed within the one year period we recognized in *Ross.* If *either* period was not tolled, however, the petition was time barred.[2] Petitioner does not contend otherwise.

The question on this appeal, then, is whether petitioner's 1996 motion to reargue before the Appellate Division and his 1997 application to the New York Court of Appeals were both properly filed applications for post-conviction relief recognized as such under governing state procedures. We conclude that petitioner's 1997 application to the New York Court of Appeals was not. Because this disposes of the appeal, we do not consider whether petitioner's time to file was tolled during the pendency of his 1996 motion to the Appellate Division.

## II. Whether Sufficient Time was Tolled by Pending and Properly Filed State Applications for Post–Conviction Relief

■ New York provides prisoners with several avenues by which they may pursue review of their convictions. In *Bennett,* for instance, the defendant's pending application was a motion to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10, clearly a state-recognized post-conviction procedure.

In his 1997 filing with the New York Court of Appeals, by contrast, petitioner Adeline did not make "an application for state post-conviction relief recognized as such under governing state procedures." He made a motion governed by the Rules of Practice for the New York Court of Appeals which provide for general motion practice before the court. N.Y. Comp. Codes R. & Regs. tit. 22, § 500.11. Those rules, much like our own, *see* Fed. R.App. P. 27(a), provide no specific requirements as to the types of motions that may be filed or the kind of relief that a party may request. But we cannot infer simply from the broad, general character of the rules that a motion made under them seeking to revive a long-since denied application for permission to appeal to the New York Court of Appeals qualifies as a recognized application for state post-conviction relief. Nothing in New York law appears to permit such a motion to be used for that purpose.

We thus do not read *Bennett* to allow defendants to create their own methods of seeking post-conviction relief by availing themselves of a state court's general motion practice. Were the law otherwise, then so long as the state court were willing

---

**2.** Petitioner's 1996 motion was pending during 50 days of the one-year period to file a federal habeas petition that we recognized in *Ross* and would thus toll his federal filing period until June 13, 1997; his 1997 motion was pending for 33 days and would further toll the filing period until July 16, 1997. Petitioner filed his federal habeas corpus petition on July 16, 1997; thus in order for his federal petition to be timely, both his 1996 and 1997 motions must have been properly filed applications for state post-conviction relief recognized as such under governing state procedures and thereby count towards the tolling of his federal filing period.

to keep its clerk's office door open to a petitioner, he or she could bring successive motions seeking to reinstate a denied petition for leave to appeal indefinitely and thus stave off the running of the AEDPA-proscribed time to file a federal petition for habeas corpus virtually in perpetuity. The *Bennett* Court did note that a defendant's motion could be "properly filed" even if he or she "did not bring the on-the-record claims raised in that motion in a court that was empowered to review them on the merits." *Bennett*, 199 F.3d at 121–22. However, that observation was made in reference to motions barred from review because of state successive post-conviction provisions and does not, in our view, authorize tolling based on the filing of creative, unrecognized motions for leave to appeal. While the *Bennett* Court recognized that AEDPA's tolling provision complements its requirement that state post-conviction procedures be exhausted before a habeas petition is filed, *see id.* at 119–20, petitioner's 1997 filing is not the sort of "exhaustion" that either the AEDPA Congress or the *Bennett* panel had in mind.

It follows, and we therefore conclude, that an insufficient portion of AEDPA's one-year limitation period was tolled by petitioner's state court motions to render his later-filed federal petition for a writ of habeas corpus timely.

## CONCLUSION

For the foregoing reasons, the district court's judgment dismissing petitioner's petition for a writ of habeas corpus is affirmed.